NOT FOR PUBLICATION (Doc. No. 47)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| MARY LYNN CLARK, : | |
| Plaintiff, : | Civil No. 11-2812 (RBK/AMD) |
| v. : | **OPINION** |
| ACME MARKETS, INC., d/b/a : SUPERVALU, INC., : | |
| Defendants. : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Acme Markets, Inc, d/b/a Supervalu, Inc. ("Defendant" or "Acme"), for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated herein, Defendant's Motion will be **GRANTED**.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

This case arises from the allegation of Mary Lynn Clark ("Plaintiff") that her former employer, Acme Markets, violated the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, et. seq., by subjecting her to a hostile work environment, retaliating against her when it suspended her for three days without pay in October, 2009, and by terminating her employment in January, 2010. Plaintiff also alleges a violation of New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, et seq., in connection with her termination.

Ms. Clark began working for Acme Markets in Bridgeton, New Jersey on December 31, 1989, and was employed there until she was terminated on January 7, 2010. Def. Statement of

Undisputed Material Facts ("SUMF"), ¶¶ 3-4.[1]  Acme Markets is a corporation that operates retail grocery stores.  Id. ¶ 1.  In 2003, Clark became a full-time employee and the front-end manager of the store.  Id. ¶ 6.  This job entailed supervising the section of the store where the cash registers are located, and assisting customers with purchases of money orders and lottery tickets.  Id. ¶ 7.

On Saturday, August 29, 2009, Clark, along with Amy Simpson, the Assistant Store Director, entered the electrical room of the store to retrieve uniforms.  Id. ¶ 14.  Clark alleges that when they entered the electrical room, she saw Carl Mason, the store manager, out of the corner of her eye.  Id. ¶ 14.  She then saw Lynn Swift, a store employee, sitting in a chair in the room.  Id.  She heard a sound that she described as the sound of a belt buckle or keys, and then heard someone run out of the room.  Based on these observations, Clark and Simpson concluded that Mason and Swift had been engaging in a sexual act in the electrical room.  Id.  Prior to August 29, 2009, Clark had witnessed Mason and Swift have what she described as "intimate conversations," and had heard rumors that the two of them were romantically involved.  Id. ¶ 16.

Simpson subsequently told Clark that she was going to report what they saw to Acme management.  Id. ¶ 19.  Through Simpson, Acme's district manager relayed a request that both Simpson and Clark provide written statements detailing what they had seen.  Id. ¶ 20.  Clark prepared a written statement in compliance with this request.  Id. ¶ 21.[2]  Acme then instituted an investigation into the happenings inside the electrical room on August 29, 2009.  While both Mason and Swift admitted to being inside the electrical room on that date, both denied engaging

---

[1] Plaintiff has not furnished a responsive statement of material facts addressing each paragraph of Acme's statement, and indicating agreement or disagreement with each paragraph, as required by Local Civil Rule 56.1.  Plaintiff has additionally indicated that she "admits that many of defendant's statements of facts are true; however many factual circumstances were left out."  Pl. Opp'n at 1.  Thus, in accordance with Local Civil Rule 56.1, the Court will deem Acme's statements as undisputed for the purposes of this motion.

[2] Simpson filed her own NJLAD lawsuit, alleging that Acme terminated her employment in retaliation for reporting what she observed.  See Simpson v. Supervalu, Inc., Civ. No. 11-4289 (D.N.J. July 26, 2011).

in any sexual contact.  Id. ¶ 26.  Acme ultimately decided to suspend both Mason and Swift for two weeks without pay, and each was transferred to a different Acme store location.  Id. ¶¶ 29, 31.

In October, 2009, Clark was suspended for three days without pay as a result of an error she made in printing out lottery tickets for a customer.  Id. ¶ 36.  Clark printed out $160 worth of lottery tickets for a customer that provided for annuity winnings, which was not the type of ticket the customer wanted.  As a result, Clark had to print out new tickets and the store was not able to recover the $160 for the erroneously printed tickets.  Id. ¶ 34.  Clark's suspension was pursuant to an Acme policy that provided for suspension of one day for each $50 that a clerk's cash register is "short."  Id. ¶ 36.

Subsequently, in January, 2010, Plaintiff was terminated for a violation of Acme policy regarding the use of checks issued by a program called the New Jersey Supplemental Nutrition Program for Women, Infants and Children.  Id. ¶¶ 46, 72.  These checks are commonly referred to as "WIC checks" and can be used to purchase certain food items.  Id. ¶ 46.  On December 20, 2009, Clark found two WIC checks that had been issued to her daughter, which indicated that the last day they could be used was December 19, 2009.  Id. ¶ 53.  Clark then called Jen Hughes, the acting office coordinator at the Bridgeton Acme, who was also a personal friend of Clark, told her about the checks that were expired by one day, and asked if she could "bring the WIC checks in."  Id. ¶ 54.  Clark referred to a previous instance from over ten years ago where an office coordinator at Acme had allowed an expired WIC check to be used and manipulated the process so that Acme could still get credit for the check.  Id.  Clark indicated that Hughes told her she could bring the checks in.  Id.  Clark admits that she knew that it was against Acme policy to accept WIC checks that are outside of the proper date range, and that ordinarily, the cash register

3

will not allow a transaction to continue if the check being processed is not within the proper date range.  Id. ¶¶ 49, 51.

The following day, Clark brought the outdated WIC checks to Acme and attempted to use them to buy food at a cash register being operated by another clerk.  Id. ¶ 55.  Clark told the cashier that she was allowed to use the checks because she had spoken to Hughes and Acme could still get credit for them.  When the clerk expressed concern, Clark went around the counter and operated the register herself, and overrode the register to cause it to accept her expired WIC checks.  Id. ¶¶ 57-59.  When Hughes found out that Clark had processed the expired WIC checks, she reported the matter to Acme management, indicating that she never gave Clark permission to use the checks.  Id. ¶¶ 62-63.  Clark admitted to a member of Acme's loss prevention unit that she used the expired WIC checks, but explained that she did not feel Acme was hurt because it could still deposit the checks.  Id. ¶ 66.  The employee who investigated the matter believed that Clark's actions could constitute criminal fraud and could have jeopardized Acme's ability to do business with the WIC program.  Id. ¶ 69.  Clark was initially suspended for the incident involving the WIC checks, which resulted in a grievance meeting at the request of Clark's union representation.  Id. ¶ 71.  Following the grievance meeting, Acme terminated Clark's employment effective January 7, 2010.  Id. ¶ 72.  Clark's union representatives subsequently brought an arbitration against Acme, challenging her termination, and the arbitrator upheld the termination.  Id. ¶¶ 82-83.

On October 18, 2010, Clark filed a lawsuit in the Superior Court of New Jersey, Gloucester County, alleging violations of the NJLAD and CEPA as a result of these events.  On May 18, 2011, the defendants removed the case pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332(a).  Plaintiff moved to remand the case to the Superior Court of New

4

Jersey, and pursuant to an Opinion and Order dated June 27, 2012, this Court denied the motion to remand. Now, Acme has moved for summary judgment on all of Clark's claims.

## II. LEGAL STANDARD

The Court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. Anderson, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. Id. at 255; Matsushida, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. Anderson, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which the jury might return a verdict in his favor. Id. at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### III. DISCUSSION

#### A. Hostile Work Environment Claim

The first cause of action that Plaintiff seeks to establish under the NJLAD is a hostile work environment. To set forth a prima facie case of a hostile work environment, a plaintiff must provide evidence that "the complained-of conduct (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive." Lehmann v. Toys 'R' Us, 132 N.J. 587, 603-04 (1993).

In this matter, Plaintiff has not set forth any evidence that the conduct she characterizes as a hostile work environment took place because of her gender. She has also not produced any evidence indicating that the conduct was "severe or pervasive" as those terms have been applied under New Jersey law. Because she has not produced evidence to set forth a prima facie case of a hostile work environment, no material fact exists for trial as to this claim, and summary judgment must be granted.

1. Relationship Between Conduct and Plaintiff's Gender

If the conduct that is the basis for a complaint "would have occurred regardless of Plaintiff's sex," then a hostile work environment claim must fail. Lehmann, 132 N.J. at 604. The evidence produced by Plaintiff that she believes is germane to her hostile work environment claim includes rumors that Plaintiff heard about Mason and Swift being romantically involved, observation by Plaintiff of "intimate conversations" between Mason and Swift, and most notably, the incident where Plaintiff discovered Mason and Swift together in the electrical room.

The existence of a consensual romantic or sexual relationship between co-workers does not, "without additional evidence of sexual hostility, give rise to a hostile environment sexual

harassment claim." Drinkwater v. Union Carbide Corp., 904 F.2d 853, 861 (3d Cir. 1990). In Drinkwater, the plaintiff alleged that a workplace relationship between a supervisor and a co-employee was "oppressive and intolerable" and "interfered with the workplace," but was unable to survive summary judgment because she produced no evidence to that effect. Id. at 861-62. Although the Third Circuit suggested that a plaintiff may be able to show that such a consensual relationship created "an oppressive and intolerable environment" which discriminates against women, the court found that there was no evidence that the individuals "flaunted the romantic nature of their relationship . . . or that these kinds of relationships were prevalent" at the defendant's work location. Id. at 862. Similarly, Plaintiff here has not demonstrated that such relationships were prevalent at Acme, or that Mason and Swift flaunted their relationship among the staff at the store. Nor has she produced evidence suggesting that any "sexual hostility" occurred at her place of employment.

The New Jersey Supreme Court similarly held that "a consensual, non-coercive relationship between" a manager and a subordinate "is insufficient to establish a claim of sexual harassment." Erickson v. March & McLennan Co., 117 N.J. 539, 558 (1990). The plaintiff in Erickson alleged that he was terminated so that his supervisor's romantic interest could be promoted. Id. at 557. The court found that the plaintiff had produced no evidence that he was discriminated against or terminated because of his gender. Id. at 559. His claim for sex discrimination failed because he had "produced no evidence that if he had been a woman, he would not have been fired." Id. at 561.

Here, Plaintiff alleges that Swift received preferential treatment due to her alleged status as the store manager's paramour, such as "no write ups, long breaks in the bosses office and other things." Pl. Opp'n at 12. However, Plaintiff has not shown that her alleged inferior

7

treatment vis-à-vis Swift was related in any way to her status as a female.  Similarly, Plaintiff has produced no evidence that she became aware of a possible relationship between Swift and Mason because of her gender, or that she happened upon them in the electrical room because of her gender.  The electrical room incident clearly could have occurred regardless of whether Plaintiff was male or female.  It requires no legal analysis to reach the obvious conclusion that a male employee in Clark's position could have just as easily stumbled upon Mason and Swift.  While Clark alleges conduct on the part of Mason and Swift that is inappropriate in any workplace, she has produced no evidence that it was especially objectionable to her because of her status as a female.

Plaintiff does not attempt to distinguish any of the cases indicating that a consensual romantic relationship between co-workers, viewed alone, does not sustain a claim for a violation of the NJLAD.  The lone statement the Court could find in Plaintiff's brief that relates to the gender element of the hostile work environment claim is as follows:

> The notes from the investigation and the various depositions and testimony within, show that Plaintiff would not have been targeted if she were not a woman and subjected to a hostile work environment witnessing a sexual act of store director, Carl Mason and part time deli clerk, Lynn Swift along with the obvious months of the highest rank employee apparently dating one of the lowest rank female employees.

Pl. Opp'n at 12.  This statement, made without citation to any of the "notes" or "testimony" referenced, appears to be an attempt to avoid summary judgment merely by reciting a required element of the claim.  The Court can find nothing in the record even remotely suggesting that Plaintiff was "targeted" because she is a woman.

Plaintiff makes much of the Mason/Swift relationship being in violation of Acme internal company policies, spending quite a large portion of her opposition brief alleging violations of Acme rules and procedures.  See Pl. Opp'n at 3-6.  She similarly uses much of her brief to

8

question the investigation performed by Acme investigators after the Mason/Swift relationship was reported to Mason's superiors. Id. at 6-9. However, Plaintiff has cited no law indicating that a violation of company policies or handbook rules, or inadequate internal investigation has any bearing on a hostile work environment claim under the NJLAD.

Because the alleged existence of a romantic relationship in the workplace, favored treatment given to Swift, and the electrical room encounter have no relationship to Clark's gender, Plaintiff fails to meet the first element of a hostile work environment claim, and her hostile work environment claim would fail for this reason alone.

2. Severe or Pervasive

Plaintiff's hostile work environment claim would also fail for a second, independent reason. In order to survive a motion for summary judgment, a plaintiff asserting such a claim under the NJLAD must offer evidence that her "workplace is permeated with discriminatory intimidation, ridicule, and insult so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." Cortes v. Univ. of Med. & Dentistry of New Jersey, 391 F. Supp. 2d 298, 307 (D.N.J. 2005) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).[3] The conduct "must be extreme to amount to a change in the terms and conditions of employment. . . ." Watkins v. Nabisco Biscuit Co., 224 F. Supp. 2d 852, 865 (D.N.J. 2002) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). The severity and pervasiveness of the conduct is evaluated from "an objective, rather than a subjective, viewpoint because the real purpose of the LAD is to eliminate real discrimination and harassment." Lehmann, 132 N.J. at 612-13. Thus, a court must "focus on the harassing conduct,

---

[3] Although the analysis in certain cases cited in this Opinion relates to Title VII of the Civil Rights Act of 1964, "Title VII analysis applies to claims brought under the NJLAD as well." Cortes, 391 F. Supp. 2d at 311 (quoting Abrams v. Lightolier, Inc., 50 F.3d 1204, 1212 (3d Cir. 1995)).

not its effect on the plaintiff or the work environment." Cutler v. Dorn, 196 N.J. 419, 431 (2008).

In determining whether harassment is "severe or pervasive," "isolated incidents" are generally not enough to sustain a claim for a hostile work environment "unless extremely serious." Faragher, 524 U.S. at 788. Discrimination is pervasive when incidents "occur either in concert or with regularity." Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir. 1990). No "magic threshold" exists as to a number of required incidents, and frequency must be balanced against other factors, such as "its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." Faragher, 524 U.S. at 787-788; see also West v. PECO, 45 F.3d 744, 757 (3d Cir. 1995) ("frequency . . . is to be considered in context, including the severity of the incidents").

Following this framework of controlling law, the Court finds that Plaintiff has not set forth evidence that any dispute of material fact exists as to whether the alleged conduct was severe or pervasive. New Jersey courts and federal courts applying the NJLAD have consistently found that a severe and pervasive work environment did not exist when confronted with conduct more egregious than that which took place here.

In Drinkwater, the Third Circuit affirmed the district court's grant of summary judgment for the defendants on a hostile work environment claim. Drinkwater, 904 F.2d at 863. In that case, the plaintiff's supervisor was involved in a consensual sexual relationship with one of his subordinates. Id. at 861-62. The supervisor at one time was alleged to have told the plaintiff that he hired the employee he was romantically involved with "because nice looking women have a tough time making it in business." Id. at 862. During a business meeting, he was also alleged to

have reprimanded the plaintiff, while praising the employee he was romantically involved with, making comments about her appearance. Id.  The Third Circuit indicated that the "two comments, however, are insufficient, in and of themselves, to support a hostile environment claim.  Hostile environment harassment claims must demonstrate a continuous period of harassment, and two comments do not create an atmosphere." Id. at 863.

In Morales-Evans v. Admin. Office of the Courts of New Jersey, 102 F. Supp. 2d 577 (D.N.J. 2000), the plaintiff alleged that her supervisor made several inappropriate advances and comments.  She claimed that her supervisor attempted to kiss her on several occasions. Id. at 588.  She also alleged that the supervisor referred to her as "voluptuous," commented about the breasts of other female employees, and described his visit to a nude beach, comparing his physical attributes to that of other beachgoers. Id.  However, the Court granted summary judgment, finding that no reasonable juror could find that these few comments over an extended period of time constituted pervasive harassment. Id. at 590.

In the racial discrimination context under the NJLAD, where a coworker made "several disparaging remarks" referencing a plaintiff's national origin, along with several threatening comments, the Third Circuit found that the comments did "not establish that discrimination was pervasive." Kidd v. MBNA Am. Bank, N.A., 93 Fed. Appx. 399, 402 (3d Cir. 2004).

Although a "single, extremely severe incident," may be sufficient to create a hostile work environment, courts have typically reserved this category for especially malicious acts, or vile and demeaning language targeted at a particular individual or group of individuals. See Taylor v. Metzger, 152 N.J. 490, 499 (1998) (surveying such cases from other jurisdictions and finding that "[o]ther courts have also recognized that under the severe-or-pervasive test a single incident of invidious harassment can create a hostile work environment.").  Plaintiff has produced no

evidence that Mason and Swift's conduct on August 29, 2009, was "invidious" or targeted at anyone in particular.  In fact, assuming that Plaintiff's conclusion about their conduct is accurate, it would appear from her version of the events that Mason and Swift put forth an effort to minimize the chances of being detected by other Acme employees, and thus her accidental near-encounter with them during the course of a sexual act would not constitute an instance of "severe" harassing conduct.

In sum, Plaintiff has not set forth any evidence of discriminatory comments or conduct directed at her.  Her claims of favoritism are similar to those alleged in Drinkwater, except without any offensive comments directed at her.  The conduct alleged by Plaintiff is both less frequent and objectively less offensive than that described in both Drinkwater and Morales-Evans, both cases in which no severe or pervasive discrimination existed as a matter of law.  Further, Plaintiff complains of no offensive conduct or comments directed specifically at her, unlike the plaintiffs in those cases.  She has certainly set forth no evidence that could lead a reasonable jury to find that any alleged conduct caused her workplace to be "permeated with discriminatory intimidation, ridicule, and insult so severe or pervasive as to alter the conditions of" her employment.  Cortes, 391 F. Supp. 2d at 307.  For the reasons set forth in this section, summary judgment will be entered for Acme on Plaintiff's hostile work environment claims.[4]

**B. Retaliation Claim under NJLAD**

Plaintiff has waived her right to make a retaliation claim under the NJLAD by filing a claim under New Jersey's Conscientious Employee Protection Act ("CEPA"); N.J.S.A. 34:19-1,

---

[4] The Court does not address the section of Plaintiff's brief where she argues that the "continuing violation doctrine" supports her hostile work environment claim.  That doctrine relates to the application of the statute of limitations, as do all of the cases cited by Plaintiff in relation to the continuing violation doctrine.  See Pl. Opp'n at 12-13.  Because the statute of limitations is not at issue in this case, the continuing violation doctrine is not relevant.

et seq. When a plaintiff files an action under CEPA, other retaliation claims are waived. The relevant statute provides:

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

N.J.S.A. 34:19-8. While causes of action that are independent from CEPA claims are not waived, "causes of action that are directly related to the employee's termination due to disclosure of the employer's wrongdoing" fall within CEPA's waiver provision. Ivan v. Cnty. of Middlesex, 595 F. Supp. 2d 425, 465 (D.N.J. 2009) (quoting Falco v. Community Med. Ctr., 296 N.J. Super. 298, 318 (App. Div. 1997)).

When NJLAD retaliation claims are substantially similar to a CEPA claim, courts have dismissed them as waived. See Ivan, 595 F. Supp. 2d at 466; Bowen v. Parking Auth. of the City of Camden, Civ. No. 00-5765, 2003 WL 22145814, at *24 (D.N.J. Sept. 13, 2003). Here, the Court does not observe any substantive differences between conduct relevant to the CEPA count and that relevant to the NJLAD retaliation count in Plaintiff's complaint. Plaintiff does not argue that the NJLAD retaliation claim should not be dismissed, so evidently, Plaintiff agrees that the two claims are substantially similar and has no objection to the NJLAD claim being deemed waived.[5] Summary judgment will thus be granted on the NJLAD retaliation claim.

### C. CEPA Claim

CEPA, which is New Jersey's whistleblower statute, "was enacted 'to protect employees from retaliatory actions by employers.'" Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 92

---

[5] New Jersey Courts have recognized that "the framework for proving a CEPA claim follows that of a LAD claim." Donofry v. Autotote Sys., Inc., 350 N.J. Super. 276, 290 (App. Div. 2001). Thus, waiver of the NJLAD retaliation count means that the merits of Plaintiff's retaliation claim will be tested under the umbrella of her CEPA claim.

(3d Cir. 1999) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189 (1988)).  To set forth a prima facie case of retaliatory discharge under CEPA, a plaintiff must demonstrate four elements.  First, the employee must demonstrate a reasonable belief that her employer's conduct was in violation of a law, rule, regulation, or public policy.  Second, she must show that she performed a "whistle-blowing" activity as described in N.J.S.A. 34:19-3.  Third, an adverse employment action must have been taken against the employee, and fourth, there must be a causal connection between the whistle-blowing activity and the adverse employment action.  Klein v. Univ. of Med. & Dentistry of New Jersey, 377 N.J. Super. 28, 38 (App. Div. 2005).  Next, if the plaintiff satisfies all four elements, the employer must demonstrate a legitimate, nondiscriminatory reason for the adverse employment action.  Id. at 39.  If the employer is able to do so, then to avoid summary judgment, the plaintiff must raise a genuine issue of material fact that the employer's explanation is merely a pretext for retaliatory action.  See Kolb v. Burns, 320 N.J. Super. 467, 478 (App. Div. 1999).

Here, Clark alleges that her three-day suspension and her eventual termination from employment at Acme was retaliation against her for revealing the Mason/Swift relationship to Acme upper management and human resources.  However, her claim fails, because she has not set forth a prima facie case of retaliatory discharge.  Specifically, she cannot show that she performed a "whistle-blowing" activity that is protected under the relevant New Jersey statute.

N.J.S.A. 34:19-3(a) provides in relevant part that an employer may not take retaliatory action against an employee who:

> Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any

14

>shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care; or
>
>(2) is fraudulent or criminal . . . .

N.J.S.A. 34:19-3(a).

CEPA also protects an employee who "[o]bjects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes" the categories described above apply to, or "is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment." N.J.S.A. 34:19-3(c). Thus, in sum, CEPA applies to employee reports or complaints of "activities the employee reasonably believes are (i) in violation of specific statute or regulation; (ii) fraudulent or criminal; or (iii) incompatible with policies concerning public health, safety or welfare or the protection of the environment." Ivan, 595 F. Supp.2d at 468.

The conduct that Clark reported to Acme management does not satisfy any of the types of protected activity under CEPA. Although Plaintiff cites no law on this issue, and makes no argument in connection with the instant motion that she reasonably believed that she reported unlawful or criminal activity, or activity contrary to public policy, the Court nevertheless will briefly discuss these issues.

A consensual sexual relationship is not in violation of any law, or any rule or regulation promulgated pursuant to law, nor is it fraudulent or criminal. See, e.g., Lawrence v. Texas, 539 U.S. 566 (2003). While engaging in sexual activity on store premises may be contrary to company rules or policies, a violation of company rules does not satisfy any of the categories described in N.J.S.A. 34:19-3. The New Jersey Supreme Court has held that internal policies do not constitute laws, rules, or regulations as required by CEPA. Dzwonar v. McDevitt, 177 N.J.

451, 457, 469 (2003); see also Smith v. TA Operating, LLC, Civ. No. 10-2563 (D.N.J. Aug. 17, 2010) ("CEPA is not intended to cover internal rule violations . . . .").

The conduct reported by Clark consists of one instance where she walked in on what she believed to be sexual conduct between her manager and another employee. Although Clark suggests that the conduct she reported was an instance of sexual harassment, she has not produced any evidence that what she reported was an instance of sexual harassment or a violation of the NJLAD. As explained in Part A of this section, consensual sexual conduct between a supervisor and an employee does not alone constitute sexual harassment under New Jersey Law. Further, Plaintiff points to nothing in the record that indicates that Clark reasonably possessed the subjective belief that the conduct she attributes to Mason and Swift was criminal, fraudulent, or in violation of any statute or regulation. It is Plaintiff's burden to "set forth facts that would support an objectively reasonable belief that a violation" of a law, rule, regulation, or clear mandate of public policy has been violated. Dzwonar, 177 N.J. at 464. Plaintiff has failed to do so.

Because of the foregoing, it is not necessary to discuss the issue of the existence of a causal link between Plaintiff's reporting of misconduct and the adverse employment actions, nor is it necessary to discuss the alleged non-discriminatory reasons for Acme's suspension and termination of Plaintiff. Plaintiff's claim under CEPA fails as a matter of law, and summary judgment will be entered for Acme on this claim.[6]

## IV. CONCLUSION

---

[6] The Court observes that Simpson also filed a suit alleging retaliatory discharge in violation of the NJLAD as a result of her reporting of the same incident between Mason and Swift. The defendant was also granted summary judgment in that case, because reporting the incident of alleged sexual conduct was found not to be protected conduct under the NJLAD. See Simpson v. Supervalu t/a Acme Markets, Inc., Civ. No. 11-4289, Memorandum Opinion And Order (D.N.J. June 4, 2013).

      For the foregoing reasons, Defendant's motion for summary judgment will be

**GRANTED**.  An appropriate Order shall enter.



Dated:  2/24/2014                               /s/ Robert B. Kugler
                                                                 ROBERT B. KUGLER
                                                                 United States District Judge